IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSHUA REED and ANTHONY ACUNA, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ASCENSION HEALTH and SHAWNNA ) <br> YOST, ) <br> ) <br> Defendants. ) | Case No. 24-cv-00419-SH |

## OPINION AND ORDER

Before the Court is Defendant Shawnna Yost's motion to dismiss for lack of personal jurisdiction.[1] As Plaintiffs have failed to make a prima facie showing that Yost purposefully directed her allegedly tortious activities at Oklahoma, the motion will be granted.

### Background

Plaintiffs Joshua Reed and Anthony Acuna bring this suit against Defendants Ascension Health and Shawnna Yost for slander and libel; false light invasion of privacy; and intentional interference with business relations.[2] (ECF No. 2-1 ¶¶ 15–26, 29–31.) Generally, Plaintiffs allege that between June and July 2023, Yost wrongfully stated, or caused others to state, that Plaintiffs abandoned their final shift working at Christi St. Joseph Hospital in Wichita, Kansas, which resulted in their termination, caused a loss of bonus pay, and otherwise harmed their reputation and employability. (Id. ¶¶ 5–14.)

---

[1] The parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes under 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a). (ECF No. 35.)

[2] Plaintiffs also assert claims of negligence and gross negligence against Defendant Ascension Health, only. (ECF No. 2-1 ¶¶ 27–28.)

Applying the standard of review set out below, the Court finds the following facts established for purposes of personal jurisdiction:

Plaintiffs are Oklahoma residents hired in Oklahoma by Ascension Connect, LLC ("Ascension Connect") to work as "Travel Associates" and provide nursing services at different locations around the country.[3] (ECF No. 2-1 ¶ 1; ECF No. 37-1 ¶ 7.) Ascension Connect is a subsidiary of Ascension Health, a non-profit corporation that "owns hundreds of hospitals around the country." (ECF No. 2-1 ¶ 2.)

Yost is a Texas resident who has been employed by Ascension Health as Senior Director—Flexible Workforce Management since September 2022. (ECF No. 31-1 ¶¶ 2–3.) She manages employees who travel to a variety of states to provide medical services in all departments of Ascension.[4] (ECF No. 37-1 ¶ 6.) Yost has never lived in, owned property in, or conducted personal business in Oklahoma. (ECF No. 31-1 ¶¶ 5–7.) Yost has visited Oklahoma twice—once for a wedding and once for a work trip unrelated to Plaintiffs' case. (*Id.* ¶ 9.)

Upon being hired in April 2023, Plaintiffs were assigned to provide nursing services to Ascension[5] via Christi St. Joseph Hospital in Wichita, Kansas, where they worked until June 30, 2023. (ECF No. 37-1 ¶ 9.) During this time, Plaintiffs were

---

[3] Plaintiff Reed's declaration states that Plaintiffs were hired by "Ascension" without indicating whether this refers to Ascension Health, Ascension Connect, or some other Ascension-related entity. (ECF No. 37-1 at ¶ 7.) Plaintiffs' petition is more specific and notes they are former employees of Ascension Connect. (ECF No. 2-1 ¶ 1.) Yost does not contradict the allegation in Plaintiffs' petition.

[4] Reed's declaration does not clarify to which Ascension entity or entities he is referring.

[5] *See* note 4, *supra*.

supervised by Cindy Daniel and Kristie Wisterman,[6] who were themselves supervised by Yost. (*Id.*)

On June 30, 2023, Plaintiffs were assigned to work from 7:00 a.m. to 7:00 p.m.; however, the charge nurse, Hope Guerrero, invited Plaintiffs to leave early due to a low number of patients at the hospital. (*Id.* ¶ 10.) Guerrero received permission to make this offer from Carie Boresh in Ascension[7] management. (*Id.*) So, Plaintiffs left early. (*Id.* ¶ 10.) Because June 30th was their last scheduled day at Christi St. Joseph, they returned to Tulsa, Oklahoma. (*Id.* ¶ 11.)

Yost then ordered Kristie Wisterman to inform Plaintiffs that they were being terminated for abandoning their shifts without permission. (*Id.*) Even though Plaintiffs, Guerro, and Daniel all explained to Ascension or Yost that Plaintiffs had permission to leave, the termination decision remained final. (*Id.* ¶¶ 12, 16–17.) The termination letters appear to mean that Plaintiffs are not re-hirable for future employment at Ascension.[8] (ECF No. 2-1 ¶ 13.) Plaintiffs further allege they did not receive their contracted shift bonuses for the week of June 30, 2023. (*Id.* ¶ 14.)

Based on the petition and declarations, the only actions by Yost specifically alleged in this case are the following:

> (1) On June 30, 2023, Yost e-mailed Kristie Wisterman, Plaintiff Acuna's supervisor, and told her that Plaintiffs left their shifts

---

[6] Both the petition and Reed's declaration, at times, spell Wisterman's first name as "Kristy." (*E.g.*, ECF No. 2-1 ¶ 5; ECF No. 37-1 ¶ 9.) The correct spelling appears to be "Kristie." (ECF No. 37-1 at 7.)

[7] *See* note 4, *supra*.

[8] Plaintiffs allege that, at one point, Ascension human resources "decided to remove the termination letters from Plaintiffs' employment files in order to make Plaintiffs re-hirable for future employment with Ascension." (*Id.* ¶ 13.) To Plaintiffs' knowledge, however, this has not happened. (*Id.*)

    without permission, abandoning their shifts and patients. (*Id.* ¶ 8.) Wisterman's location is never stated.

(2)    Also on June 30th, Yost directed Wisterman to prepare a termination letter/e-mail, asserting among other things that Plaintiffs left work without permission. (ECF No. 2-1 ¶ 7; ECF No 37-1 ¶¶ 11, 13.) Again, Wisterman's location is never stated. Plaintiff Reed declares, without contradiction from Yost, that Yost ordered Wisterman to send the e-mail to Plaintiffs in Tulsa. (ECF No. 37-1 ¶ 11.)

(3)    After Daniel informed Yost that Plaintiffs were given permission to leave their shifts early, Yost advised Daniel "to keep all of this quiet lest Daniel lose her job, as well." (ECF No. 37-1 ¶ 17.) Daniel's location is not stated.[9]

Yost now moves to dismiss, arguing the Court lacks personal jurisdiction over her. (ECF No. 31 at 1 (citing Fed. R. Civ. P. 12(b)(2).)

**Analysis**

**I.**    **Standard of Review**

Generally, a "court must have the power to decide the claim before it (subject-matter jurisdiction) and power over the parties before it (personal jurisdiction) before it can resolve a case." *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017). Here, Yost raises the latter issue—personal jurisdiction. When considering such a motion without an evidentiary hearing, the plaintiff bears the burden of making a prima facie showing that personal jurisdiction exists. *See OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). "[I]n the preliminary stages of litigation, the plaintiff's burden is light." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). The plaintiff makes a prima facie case by demonstrating, through affidavit or other written materials, facts that if true would support jurisdiction over the

---

[9] Daniel also said Yost wanted to cancel Plaintiffs' assignment. (ECF No. 2-1 ¶ 11.) Assuming this was based on a statement from Yost to Daniel, there again is no allegation as to Daniel's location or otherwise where Yost was directing her statement.

4

defendant. *OMI Holdings*, 149 F.3d at 1091. The court must also accept as true any non-conclusory allegations in the complaint not controverted by a defendant's affidavits. *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987). If the parties present conflicting affidavits, all factual disputes will be resolved in the plaintiff's favor. *Id.*

II. **Personal Jurisdiction, Generally**

A "State's authority to bind a nonresident defendant to a judgment" is constrained. *Walden v. Fiore*, 571 U.S. 277, 283 (2014). The constraint may be supplied by the law of the forum state or by the Due Process Clause of the Fourteenth Amendment. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). "Because Oklahoma's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

To comport with due process, "defendants must have 'minimum contacts' with the forum state . . . ." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1070 (10th Cir. 2008)). The minimum contacts standard may be met in one of two ways—(1) specific jurisdiction, where a defendant has purposefully directed his activities at residents of the forum and the plaintiff alleges injuries arising out of or relating to those activities; or (2) general jurisdiction, where a defendant's contacts with the forum state are such that he is subject to any suit, related or unrelated to those contacts. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (citing *OMI Holdings*, 149 F.3d at 1090–91). "[T]he contacts with the forum State must be such that the defendant 'should reasonably anticipate being

haled into court there.'" *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839–40 (10th Cir. 2020) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Further, the connection "must arise out of contacts that the defendant *himself* creates with the forum State." *Walden*, 571 U.S. at 284 (internal quotations omitted). In this analysis, the court examines "the quantity *and* quality of *Defendants'* contacts with [the forum state] to determine whether the district court's assertion of personal jurisdiction over Defendants comports with due process." *OMI Holdings*, 149 F.3d at 1092.

Even if a prima facie showing is made, however, the defendant may "demonstrate 'that the presence of some other considerations would render jurisdiction unreasonable.'" *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007) (quoting *OMI Holdings*, 149 F.3d at 1091). This is because jurisdiction must satisfy "traditional notions of fair play and substantial justice." *Id.* at 1287 (internal quotations omitted). The Tenth Circuit has instructed courts to "assess reasonableness by weighing five factors." *Id.* at 1292 (quoting *Intercon*, 205 F.3d at 1249 and listing the factors). Under this assessment, "the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* (internal quotations omitted) (cleaned up).

Here, Plaintiffs do not dispute that this Court lacks general jurisdiction over Yost, who lives in Texas. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile"). Plaintiffs argue only that specific jurisdiction is proper. (ECF No. 37.) The Court, therefore, will address specific jurisdiction.

### III.   Specific Jurisdiction

As noted above, "specific jurisdiction is proper if (1) the out-of-state defendant purposefully directed its activities at residents of the forum State, and (2) the plaintiff's alleged injuries arise out of or relate to those activities." *XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1308 (10th Cir. 2024) (internal quotations and alterations omitted). "[P]urposeful direction ensures that defendants will not be haled into court in foreign jurisdictions solely as a result of 'random, fortuitous, or attenuated contacts.'" *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). For tort-based claims, purposeful direction has three elements: "(1) an intentional action;[10] (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state." *Id.* at 1231.

The Supreme Court has clarified, however, that "knowledge of an alleged victim's out-of-state status, standing alone, cannot confer personal jurisdiction over a defendant engaging in allegedly tortious activity," since the focus remains on the defendant's relationship with the forum. *Id.* (citing *Walden*, 571 U.S. at 282–83). "Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden*, 571 U.S. at 284. As such, the minimum contacts analysis does not look solely to "the defendant's contacts with persons who reside there," given "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285.

---

[10] In this case, there is no dispute that Plaintiffs have adequately alleged an intentional action by Yost. *See Newsome v. Gallacher*, 722 F.3d 1257, 1268 (10th Cir. 2013) (finding this element satisfied when the "record contains no suggestion that the individual defendants acted unintentionally").

7

The Court finds that Plaintiffs have failed to meet their burden of establishing the first element of the test for specific jurisdiction. Namely, Plaintiffs fail to allege sufficient facts for the Court to determine that Yost purposefully directed her conduct toward Oklahoma.

## IV. Yost's Oklahoma Contacts

Having reviewed the facts as alleged above, the Court finds they are insufficient to show that Yost's actions were "expressly aimed" at Oklahoma with knowledge that the "brunt of the injury" would be felt there. The former inquiry focuses "on a defendant's intentions" and "the 'focal point' of [her] purposive efforts," while the latter concentrates on the consequences of the defendant's actions. *Dudnikov*, 514 F.3d at 1074–75.

Facts supporting Yost's Oklahoma-directed activities are almost non-existent. Plaintiffs do not contend that Yost made any of her allegedly defamatory/false-light/business-interfering statements <u>while she</u> was in Oklahoma; indeed all alleged facts would appear to indicate they were made in Texas, where Yost lives and works (ECF No. 31-1 ¶ 3; ECF No. 37-1 ¶ 6). Nor do Plaintiffs allege that Yost made any of the tortious statements <u>to anyone</u> in Oklahoma. Plaintiffs provide no information regarding the location of Wisterman, Daniel, or anyone else who might have received a communication stating that Plaintiffs were terminated for abandoning their posts.[11]

The only activity Yost conceivably directed at Oklahoma was her instruction that Wisterman send a termination e-mail to Plaintiffs in the state. (ECF No. 37-1 ¶ 11.) Even if the Court reads this allegation generously—as Yost specifically asking that an e-mail be

---

[11] To the extent Plaintiffs attempt to imply that Yost knew where they worked and, therefore, that her statements would have been seen there, Plaintiffs allege they work as travelling nurses nationwide—not exclusively, or even primarily, in Oklahoma. (ECF No. 37-1 ¶¶ 7–8.)

8

sent to Oklahoma—it does not satisfy the purposeful direction test. Here, all of Plaintiffs' claims against Yost rely on third parties receiving her tortious statements. For defamation, Plaintiffs allege that Yost "communicated . . . false statements about Plaintiffs to third parties," exposing Plaintiffs to "public hatred, contempt, ridicule, and disgrace." (ECF No. 2-1 ¶¶ 17–18.) For false light invasion of privacy, Plaintiffs allege that Yost "wrongfully made statements to others about Plaintiffs[] concerning their performance as employees" that "injure[d] Plaintiffs' reputation and standing in the community placing them in a false light." (*Id.* ¶¶ 23, 25.) For tortious interference, Plaintiffs allege that Yost "interfered with Plaintiffs' business by . . . making false and defamatory statements about Plaintiffs that were intended to harm their business relations with Ascension Connect (and other Ascension hospitals) and Plaintiffs' professional/personal reputations." (*Id.* ¶ 30.)

All of these claims depend on the statements being "communicated to (and read and understood by) third persons." *Walden*, 571 U.S. at 287. It is the circulating of the false statements that cause the "brunt" of the injury to be suffered in a particular state. *See id.* ("The crux of *Calder* [*v. Jones*, 465 U.S. 783 (1984)] was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff."). Here, the only persons in Oklahoma alleged to have received the tortious statements were Plaintiffs themselves. Plaintiffs do not, and cannot, assert that statements made <u>only to them</u> can constitute defamation, false light invasion of privacy, or tortious interference with their business relations with third parties sufficient to render jurisdiction over Yost proper in Oklahoma. *Cf., e.g.,* Restatement (Second) of Torts § 578 (1977) (to "create liability for defamation there must be . . . (b) an unprivileged publication to a third party").

9

Instead, Plaintiffs rely on their mere presence in the forum state as a basis for asserting personal jurisdiction against Yost. This is insufficient. *See, e.g., Ortiz v. Perry*, No. 17-CV-489-JHP-JFJ, 2018 WL 10127035, at *8 (N.D. Okla. May 11, 2018) ("With respect to any alleged defamatory actions taken by [defendant], Oklahoma was not the focal point of the alleged defamation." (citation omitted)); *Cleveland v. Talent Sport, Inc.*, No. CIV-12-789-D, 2013 WL 2153552, at *5 (W.D. Okla. May 17, 2013) (finding no focal point where plaintiff "does not allege facts from which to conclude that . . . the slanderous statements targeted business activities centered in Oklahoma, or that they were made to an Oklahoma resident or somehow directed toward an Oklahoma audience"); *see also Shrader*, 633 F.3d at 1244 ("defamatory postings [on the internet] may give rise to personal jurisdiction if they are directed specifically at a forum state audience or otherwise make the forum state the focal point of the message").

Plaintiffs have failed to make a prima facie showing of jurisdiction over Yost.

## Conclusion

IT IS THEREFORE ORDERED that Defendant Shawnna Yost's *Motion to Dismiss for Lack of Personal Jurisdiction* (ECF No. 31) is GRANTED. Plaintiffs' claims against Shawnna Yost are DISMISSED WITHOUT PREJUDICE.

ORDERED this 9th day of May, 2025.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT