# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

JOSHUA REED and ANTHONY ACUNA,  )
                                      )
      Plaintiffs,                     )
                                        )
v.                                       )
                                        )     Case No. 24-cv-00419-SH
                                        )
ASCENSION HEALTH and       )
ASCENSION CONNECT, LLC,    )
                                        )
      Defendants.                  )

## OPINION AND ORDER

Before the Court is the motion to dismiss of Defendant Ascension Connect, LLC[1] ("Connect") for lack of personal jurisdiction and, alternatively, for failure to state a claim.[2] The Court finds Plaintiffs have failed to make a prima facie showing of personal jurisdiction over Connect and grants the motion to dismiss on that basis.

## Background

In their suit against Connect, Plaintiffs Joshua Reed and Anthony Acuna assert claims of unpaid wages and breach of contract.[3] (Dkt. No. 51 ¶¶ 32–39.) Plaintiffs are Oklahoma residents and nurses who provide services to hospitals around the country. (*Id.* ¶¶ 1, 5.) Their dispute arises out of contracts with Connect to provide services to a hospital in Wichita, Kansas. (*Id.* ¶ 6.) Connect is a wholly owned subsidiary of Defendant

---

[1] Connect asserts Plaintiffs have misnamed it and its proper name is "AscensionConnect, LLC." (Dkt. No. 56 at 1 n.1.) But Connect has not filed a Notice of Party Name Correction on the court-provided form. The caption and the court record, therefore, will continue to reflect the name used in the complaint.

[2] The parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes under 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a). (Dkt. Nos. 7 & 35.)

[3] The operative complaint also appears to assert a claim against Connect for intentional interference with business relations, but Plaintiffs agree they only intend to assert that claim against Defendant Ascension Health. (Dkt. No. 64 at 2 n.1.)

Ascension Health ("Health"), a Missouri corporation that owns hospitals nationwide. (Dkt. No. 51 ¶¶ 2–3; Dkt. No. 56-1 at 1.[4])  Connect is not registered to do business in Oklahoma, does not maintain an agent in Oklahoma, and has no physical presence in Oklahoma.  (Dkt. No. 56-1 at 2.)

In 2023, Plaintiffs applied for employment with Connect.  (Dkt. No. 51 ¶ 5.)  In March 2023, Connect sent each Plaintiff an offer letter for its Associate Travel Program, noting their "tax home" was Oklahoma and that virtual orientation and onboarding would be completed there.[5]  (Dkt. No. 56-1 at 2, 3–4, 6–7.)  The offers of employment were for a work assignment at Ascension Via Christi St. Joseph hospital in Wichita, Kansas, for the expected dates of April 16, 2023, through July 15, 2023.  (*Id.* at 3, 6.)  The offers anticipated the possibility of future work, for instance, noting Plaintiffs were "expected to contact the Associate Travel Program coordinator 4 weeks prior to the end of each assignment to discuss subsequent assignment details."  (*Id.* at 5, 8 (also discussing what may occur when Plaintiffs transferred between travel assignments).)  But the offer letters also noted that the employment would be "at will" and that there was no guarantee of employment for a fixed duration.  (*Id.*)  Plaintiffs apparently accepted these offers in April 2023, as they allege Connect hired them that month.  (Dkt. No. 51 ¶ 5.)

Plaintiffs subsequently worked at the Wichita hospital until June 30, 2023.  (*Id.* ¶ 6.)  During this time, they were supervised by Cindy Daniel and Kristie Wisterman, who were themselves supervised by Shawna Yost, an employee of Health.  (*Id.* ¶¶ 5, 7.)  There are no allegations or evidence regarding Daniel or Wisterman's employer.

---

[4] Page numbers refer to those in the court-provided header.

[5] The offer letters also contemplated "future educational requirements that will need to be completed at [each Plaintiff's] tax home location" throughout the year.  (*Id.* at 4, 7.)

On June 30, 2023, Plaintiffs' charge nurse, Hope Guerrero, invited them to leave their shifts early due to a low number of patients at the hospital. (*Id.* ¶ 6.) Guerrero had permission from Carie Boresh, with "Ascension management," to make this offer. (*Id.*) Plaintiffs accepted the offer and left early. (*Id.*) Yost learned Plaintiffs may have left early and directed Wisterman to prepare termination letters for Plaintiffs. (*Id.* ¶ 7.) The letters were delivered to Plaintiffs on July 3, 2023, and stated that each Plaintiff told the charge RN that he was leaving without asking leadership for permission to leave early or even letting them know he was leaving. (*Id.*) That same day, Wisterman told Plaintiffs it was Yost who advised her over email that Plaintiffs left without permission and abandoned their shifts and patients. (*Id.* ¶ 8.) "Wisterman stated that Ascension Health saw this shift abandonment as a voluntary resignation and therefore they were choosing to terminate Plaintiff[s'] employment." (*Id.*)

In response, Plaintiffs tried to explain that they had permission to leave, and enlisted Guerrero to tell Health's human resources department that she had excused them. (*Id.* ¶¶ 9–10.) Audrey Dowling—a mediator acting on behalf of Connect employees—also communicated this to Health HR. (*Id.* ¶ 10.) But the termination decision stood. (*Id.* ¶¶ 10, 12–13.) Health later told Dowling that HR had decided to remove the termination letters from Plaintiffs' files to make them eligible to be rehired for future employment with Ascension hospitals, but, to Plaintiffs' knowledge, the termination letters have not been removed. (*Id.* ¶ 13.)

Plaintiffs also allege that, after their termination, Connect did not pay them the shift bonuses they earned during the week ending on June 30, 2023. (*Id.* ¶ 14.)

Connect now moves to dismiss, asserting that the Court lacks personal jurisdiction over it and, alternatively, that Plaintiffs have failed to state a claim.  (Dkt. No. 56.)  The Court finds it lacks personal jurisdiction and does not reach the other arguments.

## Analysis

### I.     Standard of Review

A court must have "power over the parties before it (personal jurisdiction) before it can resolve a case."  *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017).  Connect argues such jurisdiction is lacking.  *See* Fed. R. Civ. P. 12(b)(2).  As no party has requested an evidentiary hearing, Plaintiffs bear the burden of making a prima facie showing that personal jurisdiction exists.  *See OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).  "[I]n the preliminary stages of litigation, the plaintiff's burden is light."  *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008).  The plaintiff makes their prima facie case by demonstrating, through "affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  *OMI Holdings*, 149 F.3d at 1091.  The court must also accept as true any non-conclusory allegations in the complaint not controverted by a defendant's affidavits.  *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987).  If the parties present conflicting affidavits, all factual disputes will be resolved in the plaintiff's favor.  *Id.*

Here, Plaintiffs provide a declaration from their attorney attesting to the authenticity of documents he downloaded from Health's website.[6]  (Dkt. No. 64-1.)  Connect does not dispute the authenticity of the documents, only their relevance and

---

[6] The attorney affirmatively states that the first document was downloaded from Health's website, with a URL ending in ascension.org.  (Dkt. No. 64-1 at 1.)  He notes the other documents were downloaded from URLs with the same ending.  (*Id*. at 1–2.)

utility. (Dkt. No. 67 at 3.) The Court will consider them. The Court also considers a declaration from Health's legal operations manager, who indicates she is familiar with the corporate structure of Health's related entities, including Connect. (ECF No. 56-1 at 1-2.) The Court further considers the offer letters from Connect to Plaintiffs, which are attached to the declaration. (*Id*. at 2–8.)

## II.   Personal Jurisdiction Over Connect

### A.   Personal Jurisdiction, Generally

A "State's authority to bind a nonresident defendant to a judgment" is constrained. *Walden v. Fiore*, 571 U.S. 277, 283 (2014). The constraint may be supplied by the law of the forum state or by the Due Process Clause of the Fourteenth Amendment. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). "Because Oklahoma's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

Due process requires a defendant to have minimum contacts with the forum state.[7] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). "[T]he contacts with the forum State must be such that the defendant 'should reasonably anticipate being haled into court there.'" *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839–40 (10th Cir. 2020) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The

---

[7] Even if minimum contacts are shown, personal jurisdiction may be defeated if the defendant demonstrates that other considerations would render jurisdiction unreasonable—that is, the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007). The Court finds a lack of minimum contacts in this case and does not reach the issue of reasonableness.

minimum contacts standard may be met in one of two ways—(1) specific jurisdiction, where a defendant has purposefully directed his activities at residents of the forum and the plaintiff alleges injuries arising out of or relating to those activities; or (2) general jurisdiction, where a defendant's contacts with the forum state are such that he is subject to any suit, related or unrelated to those contacts. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (citing *OMI Holdings*, 149 F.3d at 1090–91).

Here, Plaintiffs only argue specific jurisdiction. (*See* Dkt. No. 64 at 3–8.)

### B.      Specific Jurisdiction, Generally

"Specific jurisdiction . . . is premised on something of a *quid pro quo:* in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008). The physical presence of the defendant in the forum state is not required, so long as the defendant's efforts were purposefully directed at forum residents. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). As with any assertion of personal jurisdiction, the focus is on "contacts that the defendant *himself* creates with the forum State." *Walden*, 571 U.S. at 284 (internal quotations omitted); *see also Burger King*, 471 U.S. at 480 (noting the defendant's contacts must not be random, fortuitous, or attenuated); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (noting the defendant's contacts must not be based on the unilateral activity of another person). The Court looks to both the quantity and quality of the Defendant's contacts in this analysis. *OMI Holdings*, 149 F.3d at 1092.

Relevant here, simply having an agreement with a forum resident is likely insufficient to establish minimum contacts. *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159,

1166 (10th Cir. 2011). But, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." *Id.* (internal quotations omitted). Therefore, courts must examine the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether minimum contacts exist in the forum. *Burger King*, 471 U.S. at 479; *TH Agric.*, 488 F.3d at 1288 ("That is, the contract relied upon to establish minimum contacts must have a 'substantial connection' with the forum state.").

### C. Connect Lacks the Necessary Minimum Contacts with Oklahoma in this Case

Resolving all factual disputes in Plaintiffs' favor, the facts provided here are too limited to show that Connect directed its conduct at the forum state in such a manner as to create a "substantial connection" with Oklahoma.

Plaintiffs argue that Connect advertised its travel nurse program to Oklahoma residents, but they provide no allegations or evidence of such advertisement.[8] Plaintiffs also do not assert that Connect recruited them for the program. Plaintiffs have shown nothing by way of "solicitations or direct communications" that might indicate Connect purposefully directed its conduct toward Oklahoma. *Old Republic*, 877 F.3d at 912. Instead, Plaintiffs indicate <u>they</u> applied for employment with Connect, with no other context.

---

[8] Plaintiffs have provided a printout from the Health website showing that employees in the Associate Travel Program may work in multiple states that include Oklahoma. (Dkt. No. 64-1 at 3.) But they provide nothing indicating this website was directed specifically to Oklahoma residents or was otherwise used to specifically recruit workers like Plaintiffs from Oklahoma.

Additionally, the work Plaintiffs were hired to do was unconnected to Oklahoma. Connect specifically hired Plaintiffs to work in Kansas for a period between April and July 2023. Connect's offer letter indicated that there was potential for future work if the parties reached such an agreement. However, even if the terms of an agreement "contemplated some potentially ongoing consequences," "the absence of prior negotiations, long-term contractual commitments, or any significant course of dealing" indicate a lack of personal jurisdiction. *Id.* at 910.

Finally, there is nothing in the parties' actual course of dealing indicating that Connect sought a "substantial connection" with Oklahoma. Plaintiffs worked only one job for Connect in Kansas, and Plaintiffs have presented no evidence of any other Oklahoma-bound communications or contacts between Connect and Oklahoma during the course of the relationship.

All that's left is that Connect sent offer letters to Plaintiffs, apparently in Oklahoma. Those letters noted that Plaintiffs would have to perform their virtual orientation and onboarding from their tax home and complete future educational requirements in their tax home, which was Oklahoma. This is not enough to establish the necessary minimum contacts for specific jurisdiction. *See, e.g.*, *Serv. Experts, LLC v. Otte*, 609 F. Supp. 3d 1183, 1192 (D. Kan. 2022) (while employee worked and resided in Kansas, defendant could not be said to have purposefully directed their conduct toward the state since there was no indication they hired him because he lived in Kansas, or intended he perform any duties there, and, as such, the employees' "residence in Kansas is random and not an indication of . . . purposeful conduct"); *Young v. Feeney*, No. 2:07-CV-296 TS, 2008 WL 919529, at *5–6 (D. Utah Apr. 3, 2008) (no personal jurisdiction in Utah where company hired Utah resident to work while in North Carolina, for work to be performed in Iraq,

and merely had phone calls with employee in Utah and sent paychecks to bank account that listed employee's Utah address).

The Court finds Plaintiffs have failed to make a prima facie showing that personal jurisdiction exists over Connect in this case, and their claims against Connect will be dismissed without prejudice. *See Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1216 (10th Cir. 2002) (where jurisdictional ruling does not address the merits, dismissal should be without prejudice).

### Conclusion

IT IS THEREFORE ORDERED that *Defendant AscensionConnect's Motion to Dismiss Plaintiffs' First Amended Complaint* (Dkt. No. 56) is GRANTED. Plaintiffs' claims against Defendant Ascension Connect, LLC, are DISMISSED WITHOUT PREJUDICE.

ORDERED this 25th day of March, 2026.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT