IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

JOSHUA REED and ANTHONY ACUNA,      )
                                    )
        Plaintiffs,                 )
                                    )
v.                                  )        Case No. 24-cv-00419-SH
                                    )
ASCENSION HEALTH and                )
ASCENSION CONNECT, LLC,             )
                                    )
        Defendants.                 )

## OPINION AND ORDER

Before the Court is Defendant Ascension Health's motion to dismiss, which argues Plaintiffs have failed to state a claim on which relief may be granted.[1]  The Court finds Plaintiffs have alleged plausible claims of defamation and interference with business relations, and those claims will not be dismissed.  Plaintiffs, however, have failed to allege publicity—an essential element of their invasion of privacy claim—and have failed to allege prior knowledge—an essential element of their negligent supervision claim.  Ascension Health's motion to dismiss will be granted in part and denied in part.

## Factual Background

Accepting the factual allegations in the complaint[2] as true, and viewing them in the light most favorable to the nonmoving party, Plaintiffs allege as follows:

Plaintiffs Joshua Reed and Anthony Acuna are nurses who provide services to hospitals around the country.  (Dkt. No. 51 ¶ 5.)  In 2023, Defendant Ascension Connect,

---

[1] The parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes under 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a).  (Dkt. Nos. 7 & 35.)

[2] All references to the complaint refer to the current operative pleading, the *First Amended Complaint* (Dkt. No. 51).

LLC ("Connect") hired Plaintiffs. (*Id.*) Connect is a subsidiary of Defendant Ascension Health ("Health"). (*Id.* ¶ 3.)

On April 16, 2023, Connect assigned Plaintiffs to provide nursing services to Ascension Via Christi St. Joseph Hospital in Wichita, Kansas. (*Id.* ¶ 6.) Reed and Acuna were supervised by Cindy Daniel and Kristie Wisterman, who were themselves supervised by Shawna Yost, an employee of Health. (*Id.* ¶¶ 5, 7.) The complaint contains no allegations regarding Daniel or Wisterman's employer.

On June 30, 2023, Plaintiffs' charge nurse, Hope Guerrero, invited them to leave their shifts early due to a low number of patients at the hospital. (*Id.* ¶ 6.) Guerrero had permission from Carie Boresh, with "Ascension management," to make this offer. (*Id.*) Plaintiffs accepted the offer and left early. (*Id.*) Yost learned that Plaintiffs may have left early and directed Wisterman to prepare termination letters for Plaintiffs. (*Id.* ¶ 7.) The letters stated that each Plaintiff handed off his patients and told the charge RN that he was leaving without asking leadership for permission or even letting them know he was leaving. (*Id.*) The day these letters were delivered, Wisterman told Plaintiffs it was Yost who advised her over email that Plaintiffs left without permission and abandoned their shifts and patients. (*Id.* ¶ 8.) "Wisterman stated that Ascension Health saw this shift abandonment as a voluntary resignation and therefore they were choosing to terminate Plaintiff[s'] employment." (*Id.*)

In response, Plaintiffs tried to explain that they had permission to leave, and enlisted Guerrero to tell Health's human resources department that she had excused them. (*Id.* ¶¶ 9–10.) Audrey Dowling—a mediator acting on behalf of Connect employees—also communicated this to Health's HR department. (*Id.* ¶ 10.) But the termination decision stood. (*Id.* ¶¶ 10, 12–13.) Health later told Dowling that HR had

decided to remove the termination letters from Plaintiffs' employment files to make them eligible to be rehired for future employment with Ascension hospitals, but, to Plaintiffs' knowledge, the termination letters have not been removed.  (*Id.* ¶ 13.)

Further, after the termination, Connect did not pay Plaintiffs the bonus they earned during their last week of work.  (*Id.* ¶ 14.)

### Procedural Background

Plaintiffs have now filed suit, asserting four claims against Health:  (1) defamation, (2) false light invasion of privacy, (3) negligence/gross negligence, and (4) intentional interference with business relations.  (*Id.* ¶¶ 15–31.)  Health moves to dismiss all four claims.  (Dkt. No. 53.)

### Analysis

### I.    Standard of Review

A 12(b)(6) motion argues that a plaintiff has failed "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive such a motion, "a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  All such reasonable inferences are resolved in the plaintiff's favor.  *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555–56 (citation modified).  The practice of accepting

allegations as true does not apply to legal conclusions, however, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

## II.    Preliminary Matters

Before digging into Health's motion, the Court must address two preliminary matters—whether it will consider the documents attached to Plaintiffs' response brief and whether Health has waived its right to bring the motion to dismiss.

### A.    Documents Considered

First, the Court declines to consider the documents attached to Plaintiffs' response. When assessing allegations in a complaint, the Court looks not only to the complaint itself, but to "documents attached to or referenced in the complaint if they 'are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Brokers' Choice*, 861 F.3d at 1103 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). The Court may also take judicial notice of facts that are a matter of public record. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). When the Court takes judicial notice of a document, it considers the document only for its contents, not to prove the truth of the matters asserted therein. *Id.*

Here, Plaintiffs have attached to their response brief a declaration from their attorney that, in turn, attaches a "copy of Management's Discussion and Analysis of Financial Condition and Results of Operations for Ascension" and a Wikipedia article about "Ascension (healthcare system)." (Dkt. No. 63-1.) None of these documents, however, were referenced in the complaint.

As for the "Management's Discussion," the declaration provides no information regarding where counsel obtained the document, and, in any event, the Court cannot treat

the statements in it as true for purposes of a Rule 12(b)(6) motion, *Tal*, 453 F.3d at 1264 n.24.

As for the Wikipedia article, Wikipedia holds itself out as "a free online encyclopedia that anyone can edit, and millions already have." Wikipedia:About, https://en.wikipedia.org/wiki/Wikipedia:About [https://perma.cc/UNK3-XPKE] (last visited Mar. 24, 2026). The contents of a Wikipedia article therefore do not qualify as facts that are not subject to reasonable dispute and whose accuracy cannot reasonably be questioned. *See Stewart v. Stoller*, No. 2:07-CV-552-DB-EJF, 2014 WL 1248072, at *1 (D. Utah Mar. 25, 2014) ("Courts have expressed particular concern with sources that allow users to alter content freely, including Wikipedia.").

The Court will not consider the documents proffered by Plaintiffs in ruling on Health's motion to dismiss.

### B.    The Timeliness of Health's Motion

Next, Plaintiffs argue the Court should not consider Health's motion, because Health filed an answer to Plaintiffs' original complaint and because Health did not preserve its 12(b)(6) defense in the earlier answer. (Dkt. No. 63 at 2–5.[3]) Plaintiffs are wrong.

First, it is not true—as Plaintiff asserts—that "Ascension Health did not preserve a failure to state a claim defense in its answer." (*Id*. at 4.) Health did preserve such a defense, stating, "Plaintiffs' Complaint fails to state a claim upon which relief can be granted, in whole or in part." (Dkt. No. 17 at 5.)

---

[3] Page numbers refer to those in the court-provided header.

Second, the Court need not decide the question of whether a defendant is barred from filing a new 12(b)(6) motion on an amended complaint when it filed an answer to the original complaint and the amended complaint does not present new claims against it. Even if no amended complaint had been filed, a late 12(b)(6) motion would "generally be treated as a motion for judgment on the pleadings" under Rule 12(c).[4] *Jacobsen*, 287 F.3d at 941 n.2; *see also* 5C Wright & Miller's Federal Practice and Procedure § 1368 (3d ed. 2025) ("Because of the similarity between the Rule 12(c) and Rule 12(b) standards, courts typically will construe . . . a late Rule 12(b) motion . . . as if it were brought under Rule 12(c) . . . .").

In different circumstances, there might be a timing issue with Health's motion being addressed under Rule 12(c) due to the pendency of Connect's motion to dismiss. *See Sanders v. Polaris Indus., Inc.*, No. 21-CV-02055-NYW-MEH, 2022 WL 16713089, at *5 (D. Colo. Nov. 4, 2022) ("Rule 12(c) permits motions for judgment on the pleadings, but only after the pleadings are closed." (citation modified)); *see also* Fed. R. Civ. P. 12(c) ("After the pleadings are closed . . . a party may move for judgment on the pleadings"). Here, however, the Court has dismissed Plaintiffs' claims against Connect, and, if Plaintiffs are correct, the only remaining defendant (Health) may be said to have answered.

As such, to the extent Health's motion was untimely, the Court could construe it as a Rule 12(c) motion, subject to the same Rule 12(b)(6) standards of review. *See Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (applying same standards to Rule 12(c) and 12(b)(6) motions).

---

[4] "Failure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleading . . .; (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2).

6

### III.    Plaintiffs' Claims Against Health

The Court now turns to whether Plaintiffs have stated claims against Health for (1) defamation, (2) false light invasion of privacy, (3) negligence/gross negligence, or (4) intentional interference with business relations.

### A.    Defamation

Plaintiffs' first claim is one for defamation.  (Dkt. No. 51 ¶¶ 15–21.)  Health argues the defamation claim should be dismissed because there was no "publication" of the allegedly defamatory statements and, if there was publication, conditional privilege attached.  (Dkt. No. 53 at 4–6.)  The Court finds Plaintiffs have sufficiently pled publication without privilege and have, therefore, stated a claim.

### 1.    Defamation—Generally

To state a claim for defamation of a private figure under Oklahoma law, a plaintiff must plead facts showing "(1) [a] false and defamatory statement, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher[,] and (4) either the actionability of the statement irrespective of special damage [per se], or the existence of special damage [per quod]."  *Nelson v. Am. Hometown Publ'g, Inc.*, 2014 OK CIV APP 57, ¶ 24, 333 P.3d 962, 969 (alteration in original) (internal quotations omitted); *see also* Okla. Stat. tit. 12, § 1441 (defining libel); Okla. Stat. tit. 12, § 1442 (defining slander).  Health argues that facts supporting the second element—unprivileged publication to a third party—are missing from Plaintiffs' complaint.

### 2.    Publication to a Third Party

### a.    Publications & Intracompany Communications

In its most general sense, "[p]ublication of defamatory matter is its communication . . . to one other than the person defamed." Restatement (Second) of Torts § 577 (1977).[5] Under Oklahoma law, however, intracompany communications do not qualify as publications. *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1553 (10th Cir. 1995) (applying Oklahoma law). "Agents and employees . . . are not third persons in their relations to the corporation, within the meaning of the laws pertaining to the publication of libels" but "are a part and parcel of the corporation itself, so much so, indeed, that their acts within the limits of their employment are the acts of the corporation." *Magnolia Petroleum Co. v. Davidson*, 1944 OK 182, ¶ 31, 148 P.2d 468, 471 (quoting *Prins v. Holland-N. Am. Mortg. Co.*, 181 P. 680, 680 (1919)).  As such, communications from one employee to another employee cannot be a publication to a third party, because the corporation "is but communicating with itself." *Id.* (quoting *Prins*, 181 P. at 681); *Starr*, 54 F.3d at 1552–53 (same).

This understanding of intracompany communications has been repeatedly noted by courts applying Oklahoma law. *See, e.g.*, *Messina v. Kroblin Transp. Sys., Inc.*, 903 F.2d 1306, 1309 (10th Cir. 1990) ("statements made by one corporate employee during the performance of his duties within the hearing only of other corporate employees does not constitute publication"); *Thornton v. Holdenville Gen. Hosp.*, 2001 OK CIV APP 133, ¶ 11, 36 P.3d 456, 460 (communications "inside a corporation, between its officers,

---

[5] The Oklahoma Supreme Court has relied on the Restatement (Second) of Torts in addressing defamation claims. *See, e.g.*, *Samson Inv. Co. v. Chevaillier*, 1999 OK 19, ¶ 7–8, 12–13, 988 P.2d 327, 330–31 (discussing litigation privilege).

employees, and agents, is never a publication for the purposes of actions for defamation"); *Phuong Nguyen v. Globe Life*, No. CV-18-557-D, 2019 WL 208900, at *5–6 (W.D. Okla. Jan. 15, 2019) (noting a "statement made within a company by one employee to another employee within the company" is not publication). The rule applies to both a company's employees and its agents. *See, e.g.*, *Richardson v. Watco Companies, Inc.*, No. CIV-10-0047-HE, 2011 WL 1500504, at *3 (W.D. Okla. Apr. 19, 2011) (email sent from company to benefits administrator was not publication, as communication was sent to agent).

### b. Plaintiffs Allege Publication to a Third Party

Here, Plaintiffs allege Yost—a Health employee—falsely told Wisterman that Plaintiffs left their shifts early and without permission, abandoning their patients. This resulted in Plaintiffs being terminated from their employment with Connect and not receiving their final bonus payment.

Health argues that this communication must be classified as an intracompany communication. It is not entirely clear whether Health bases this argument on an assertion that (1) the Court should disregard Connect's separate corporate status, (2) Wisterman is Health's employee, or (3) Connect is an agent of Health. (Dkt. No. 53 at 4–6.) Whichever argument Health is making, the matter cannot be decided in Health's favor based on the facts in the complaint.

First, there is nothing in the complaint that would indicate Connect is not a separate entity from Health; instead, the complaint and the parties' other arguments assume that it is.

Second, it is a reasonable inference that Wisterman was either a Connect employee or acting on behalf of Connect when she received the communication from Yost. The complaint clearly alleges that Wisterman prepared the letters terminating Plaintiffs'

9

employment with Connect, and it is reasonable to assume that only someone who was an employee or agent of Connect could terminate its employees.

Finally, the Court cannot infer from the complaint that Connect was acting as an agent of Health when it hired and terminated Plaintiffs. Agency is generally a question of fact. *N.H. v. Presbyterian Church (U.S.A.)*, 1999 OK 88, ¶ 12, 998 P.2d 592, 598. The facts in the complaint are that Connect hired Plaintiffs to work at a Wichita hospital and then fired them after Yost falsely stated they left their posts early. The complaint does not state that the Wichita hospital is owned by Health, but this would make no difference. There are numerous ways a hospital may obtain staff, and many of these would not require an agency relationship. For example, a hospital might contract with a third party to provide staffing at its facilities as an independent contractor. Indeed, it would be logical to assume that a hospital might engage in such third-party contracting precisely to avoid an agency relationship. *See, e.g.*, *Placido v. Hawasli*, No. 359890, 2023 WL 3768617, at *2 (Mich. Ct. App. June 1, 2023) (case where Ascension Medical Group and Ascension St. John Hospital argued that a professional services agreement between the former entity and a company providing surgical staff "does not establish sufficient control to impose an agency relationship, and in turn, liability upon them for the actions" of an individual doctor). Drawing all inference in Plaintiff's favor, the Court cannot infer that Connect acted as Health's agent and, therefore, should be treated as the same person as Health.

Plaintiffs have sufficiently alleged publication to a third party.

### 3.    Conditional Privilege

Health also argues that, even if there was publication, its statements would fall under the conditional "common interest" privilege. (Dkt. No. 53 at 6.)

### a.    Conditional Privilege—Generally

"One who publishes defamatory matter concerning another is not liable for the publication if (a) the matter is published upon an occasion that makes it conditionally privileged and (b) the privilege is not abused."  Restatement (Second) of Torts § 593 (1977).  For instance, publication might be "conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know."  Restatement (Second) of Torts § 596 (1977); *see also Thornton*, 2001 OK CIV APP 133, ¶ 16, 36 P.3d at 461 ("A conditional privilege attaches to statements, which would ordinarily be defamatory, made in good faith on a subject in which the speaker has an interest or in reference to which he has or honestly believes he has a duty to perform.").

However, one "who publishes defamatory matter . . . upon an occasion giving rise to a conditional privilege is subject to liability . . . if he abuses the privilege."  Restatement (Second) of Torts §  599 (1977).  The privilege may be abused because of the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter . . . ."  *Id.* cmt. a.; *see also Trice v. Burress*, 2006 OK CIV APP 79, ¶ 16 & n.14, 137 P.3d 1253, 1259 & n.14 (same).  The existence of the requisite state of mind to destroy a qualified privilege is "normally a question of fact."  *Thornton*, 2001 OK CIV APP 133, ¶ 19, at 36 P.3d at 461 (discussing malice).

### b.    Plaintiffs Allege a Non-Privileged Statement

Plaintiffs have adequately alleged that Health's publication was not privileged. Health argues "Yost had reason to believe [Plaintiffs] left their shifts early when she directed Wisterman to prepare their termination letters" and "Plaintiff[]s do not plausibly

11

allege that Yost acted in bad faith when conveying that belief to Wisterman." (Dkt. No. 53 at 6 (citing Dkt. No. 51 ¶¶ 7–8).)  But Health reads the complaint too narrowly.  The complaint does allege that, on June 30, 2023, "it came to Yost's attention that Plaintiffs may have left their shifts early that day." (Dkt. No. 51 ¶ 7 (emphasis added).)  However, it also alleges that "the charge nurse, Hope Guerrero, invited Plaintiffs to leave early and not complete their shifts." (*Id.* ¶ 6.)  Nevertheless, Yost (acting on behalf of Health) told Wisterman to prepare termination letters stating Plaintiffs "told the charge RN that [they] were leaving" without asking permission to leave early.  (*Id.* ¶ 7.)  The Court may infer from these allegations that Health did not attempt to learn the truth from the charge nurse before publishing the false statement to Wisterman.  This inference is further bolstered by Health's subsequent actions upon being told of the statement's falsity.  (*E.g., id.* ¶ 10 (Dowling "took Guerrero's email to Ascension Health human resources and leadership and was told that the termination would stand."); *id.* ¶ 11 ("[Daniel] explained that Yost wanted to 'cancel Plaintiffs' assignment.'").)

As Plaintiffs have alleged non-privileged statements published to a third party, the Court finds they have pled a plausible claim of defamation against Health.

### B.    False Light Invasion of Privacy

Plaintiffs' false light invasion of privacy claims rely on the same wrongful statements by Health. (*See, e.g.*, Dkt. No. 51 ¶ 23.)  Health argues these claims should be dismissed for failing to allege a disclosure to the public at large. (Dkt. No. 68 at 7–8.)  In this instance, Health is correct.

To state a claim of false light invasion of privacy under Oklahoma law, the plaintiff must allege:

> (1) the defendant gave publicity to a matter concerning the plaintiff that placed the plaintiff before the public in a false light, (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person, [and] (3) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Talley v. Time, Inc.*, 923 F.3d 878, 894 (10th Cir. 2019) (internal quotations omitted).

To satisfy the "publicity" element, the matter must be made public "by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge" such that it either "reaches, or is sure to reach the public." *Hadnot v. Shaw*, 1992 OK 21, n.31, 826 P.2d 978, 986 n.31 (internal quotations omitted). Communicating a fact "to a single person or even to a small group of persons" is insufficient. *Id.* (quoting Restatement (Second) of Torts § 652D cmt. a (1977)). "Oklahoma cases recognizing a false light [] invasion of privacy claim generally involve statements made in a newspaper or some other form of media distributed to the general public." *Taverna v. First Wave, Inc.*, No. 10-CV-129-CVE-FHM, 2010 WL 2902240, at *4 (N.D. Okla. July 22, 2010) (collecting cases).

Here, Plaintiffs allege nothing indicating that the statements about them reached the public or were sure to reach the public. Plaintiffs allege only a communication from Health to Connect, which resulted in a letter to Plaintiffs, and a note being placed in their employment file at Health. One can infer from the complaint that the presence of this letter in the Health file would mean that Plaintiffs would not be eligible "for future employment with Ascension hospitals." (Dkt. No. 51 ¶ 13.) But the Court cannot draw a reasonable inference from this to the belief that the false statement will, therefore, inevitably become public knowledge.

13

Thus, Plaintiffs have failed to state a claim for false light invasion of privacy against Health. *Cf. Taverna*, 2010 WL 2902240, at *3–4 (dismissing claim where complaint alleged former co-worker made statement "to the 'entire engineering staff,' but provided no indication of the size of the engineering department or her former employer"); *Thomas v. City of Bartlesville*, No. 11-CV-0389-CVE-PJC, 2011 WL 5119518, at *3–4 (N.D. Okla. Oct. 28, 2011) (allegation of disclosure "to other police officers for the purpose of making a personnel decision . . . suggests that the disclosure was not to the general public").

## C.      Negligence/Gross Negligence

Plaintiffs also claim Health was negligent or grossly negligent in supervising its employees or agents.  (Dkt. No. 51 ¶ 28.)  Health argues this claim should be dismissed, because nothing in the complaint suggests "Health had reason to believe that Yost (or any other Ascension Health or AscensionConnect employee) had the propensity to harm Plaintiffs in the way Plaintiffs allege they were harmed" (Dkt. No. 53 at 9).  The Court agrees with Health.

### 1.      Negligent Hiring, Supervision, and Retention—Generally

Negligence under Oklahoma law requires the plaintiff to "show duty, breach, and causation," specifically "(1) a duty owed by defendant to protect plaintiff from injury, (2) defendant's failure to properly exercise or perform that duty, and (3) defendant's failure to exercise his duty of care proximately caused plaintiff's injury." *McGehee v. Forest Oil Corp.*, 908 F.3d 619, 624 (10th Cir. 2018) (citing *John v. Saint Francis Hosp.,*

*Inc.*, 2017 OK 81, ¶ 32, 405 P.3d 681, 691); *see also* Okla. Stat. tit. 25, § 4 (defining degrees of care); *id.* § 6 (defining degrees of negligence).[6]

When seeking recovery for an employer's negligent hiring, supervision, or retention, the "claim is based on an employee's harm to a third party through employment." *N.H.*, 1999 OK 88, ¶ 20, 998 P.2d at 600. The question is whether, "at the critical time of the tortious incident," the employer had reason to believe the employee would create an undue risk of harm to others. *Id.* "Employers are held liable for their prior knowledge of the servant's propensity to commit the very harm for which damages are sought." *Id.* This is the "critical element" of a negligent supervision claim. *Id.* ¶ 21, at 600; *see also Brown v. Muldrow Pub. Schs.*, 2024 OK CIV APP 20, ¶ 23, 557 P.3d 1063, 1074 ("In essence, an employer may bear liability of an employee's unreasonable or injurious conduct upon a third party if said conduct was reasonably foreseeable.").

### 2.    Plaintiffs Fail to State a Claim for Negligence/Gross Negligence

Plaintiffs' complaint contains no allegations regarding Health's prior knowledge of Yost's propensity to defame employees. This is fatal to their negligence claims. *See Hyatt v. Bd. of Regents of Okla. Colleges*, 659 F. App'x 522, 526 (10th Cir. 2016) (affirming dismissal where "no facts are alleged which would demonstrate that [the defendants] had any notice or reason to know of the security officer's propensity to engage in the type of misconduct at issue in this case");[7] *Shahan v. Tractor Supply Co.*, No. CIV-24-00016-JD,

---

[6] *See also Sinclair v. Hembree & Hodgson Constr., L.L.C.*, No. CIV-18-938-D, 2020 WL 3965010, at *5 (W.D. Okla. July 13, 2020) (noting the Oklahoma Supreme Court "refers to gross negligence as a reckless disregard for the rights of others or the equivalent of evil intent").

[7] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

2024 WL 4204931, at *2 (W.D. Okla. Sept. 16, 2024) (dismissing where "petition fails to allege any facts that would allow the Court to infer that [the employer] had a reason to believe its employee[s] 'would create an undue risk of harm to others'").

Plaintiffs argue the Court can find negligent supervision here, because Health did nothing after the fact to alter the damages caused by Yost's defamatory statement. (Dkt. No. 63 at 10.) But Plaintiffs provide no legal authorities for the assertion that negligent supervision can be based on acts that occur after the employee has committed the harm.

Health's motion as to Plaintiffs' negligence claim will be granted.

### D.    Intentional Interference with Business Relations

In the complaint, Plaintiffs allege Health committed intentional interference with business relations by "making false and defamatory statements about Plaintiffs that were intended to harm their business relations with Ascension Connect (and other Ascension hospitals) and Plaintiffs' professional/personal reputations."[8] (Dkt. No. 51 ¶ 31.)

To assert a claim for tortious interference with business relations, a plaintiff must allege "(1) a business or contractual right that was interfered with, (2) interference that was malicious and wrongful and was neither justified, privileged nor excusable, and (3) damage caused by interference." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1093 (10th Cir. 2006) (applying Oklahoma law). Health argues the interference claim fails because (1) a business cannot interfere with its own relationships

---

[8] The complaint refers generically to "Defendants," but Plaintiffs have clarified that this claim is asserted only against Health. (Dkt. No. 63 at 11.) The Court credits this clarification, as it comports with the remainder of the complaint, which only alleges a false and defamatory statement by Health employees. (Dkt. No. 51 ¶ 7.) Even if Plaintiffs had also attempted to state this claim against Connect, it would have no effect on Health. While Connect cannot interfere with its own relations, *Dow Chem. Corp. v. Weevil-Cide Co.*, 897 F.2d 481, 488–89 (10th Cir. 1990), Health is a separate entity and can improperly interfere with Connect's relations.

and (2) there is no malicious or wrongful conduct if there was no defamation. (Dkt. No. 53 at 10–11.)

Both arguments are easily disposed of, as each depends on findings the Court cannot make at this stage. First, Plaintiffs allege Health interfered with their relationship with <u>Connect</u>. There is nothing in the complaint indicating Connect lacks a separate corporate identity, and no party has argued otherwise. Second, the Court has already found Plaintiffs to have stated a defamation claim against Health. Therefore, Health's motion to dismiss Plaintiffs' claim for intentional interference with business relations will be denied.

### Conclusion

IT IS THEREFORE ORDERED that *Defendant Ascension Health's Motion to Dismiss Plaintiffs' First Amended Complaint* (Dkt. No. 53) is GRANTED IN PART AND DENIED IN PART. Plaintiffs' claims against Defendant Ascension Health for false light invasion of privacy and negligence are DISMISSED WITHOUT PREJUDICE.

The following claims remain in this case: Count I (Defamation: Slander and Libel) and Count IV (Intentional Interference with Business Relations) as to Defendant Ascension Health.

ORDERED this 25th day of March, 2026.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT